Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Rebecca R. Pallmeyer | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 6753 | **DATE** | 8/3/2004 |
| **CASE TITLE** | Jessica B. Mendez vs. M.R.S. Associates | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]   Enter Memorandum Opinion And Order.  Plaintiff's motion to certify class action (Doc. 10-1) is granted.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | 2 | **Document Number** |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | AUG 0 5 2004 | |
| | Notified counsel by telephone. | | date docketed | 20 |
| | Docketing to mail notices. | U.S. DISTRICT COURT CLERK | docketing deputy initials | |
| | Mail AO 450 form. | | 8/3/2004 | |
| | Copy to judge/magistrate judge. | | date mailed notice | |
| ETV | courtroom deputy's initials | 2004 AUG -4 PM 5:24 | ETV | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

JESSICA B. MENDEZ, f/k/a Cox, )
individually and on behalf of all others )
similarly situated, )
)
           **Plaintiff,** )
)
       **v.** ) **No. 03 C 6753**
)
M.R.S. ASSOCIATES, a New Jersey )     **Judge Rebecca R. Pallmeyer**
corporation, )
)
         **Defendant.** )

**DOCKETED**

AUG 0 5 2004

## MEMORANDUM OPINION AND ORDER

Plaintiff Jessica Mendez received a form debt collection letter from Defendant M.R.S. Associates ("M.R.S") seeking to collect on unpaid credit card debt.  Plaintiff alleges the letter violates the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692g, because it creates the false impression that a consumer may dispute the debt only if she believes the debt is not valid and has some explanation for that belief.  Plaintiff seeks to represent a class of borrowers who received the same letter from Defendant. Defendant resists class certification, arguing that Rule 23's requirements of typicality, adequacy, and superiority are not satisfied. FED. R. CIV. P. 23. For the reasons explained here, the court concludes that the requirements for class certification are met and that class certification is therefore appropriate.

## FACTS

Defendant, M.R.S. Associates, sent a form debt collection letter to Plaintiff, Jessica Mendez, on October 1, 2002 seeking collection of $491.51 past due on Plaintiff's First Premier Bankcard. (Letter from M.R.S. to Cox of 10/01/02, Ex. A to Plaintiff's Motion and Memorandum in Support of Class Certification (hereinafter, "Pl.'s Mot.").)  Under a heading entitled, "Important Consumer Information," the letter states that



[u]nless you notify this office within 30 days after receiving this notice that you dispute the validity of the debt or any portion thereof, this office will assume this debt is valid.  If you notify this office in writing within 30 days from receiving this notice that you dispute the validity of this debt or any portion thereof, this office will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification.

(*Id.*)  The letter includes the provision that "[i]f for some reason you believe the debt is not valid, please review your rights listed at the bottom of this letter and contact our office to explain the nature of the dispute." (*Id.*)  The letter concludes with this question in bold print: "Which would you prefer – the positive benefits or negative consequences? The choice is yours!" Defendant mailed an initial debt collection letter in the same form to approximately 750-900 Illinois residents from whom it sought to collect similar debts.  (Letter from Jennifer Wigington to David Phillips of 5/25/2002, Ex. A to Plaintiff's Reply in Support of Motion for Class Certification (hereinafter, "Pl.'s Re.").)  Plaintiff alleges that this letter violates section 1692g(4) of the FDCPA, which requires that debt collectors advise consumers of their right to dispute a debt, regardless of whether they have some explanation for the debt's invalidity.

Sometime before 2000, Plaintiff opened her First Premier Bankcard when she received an application in the mail, and subsequently exceeded her credit limit of $250.  (Plaintiff Dep., at 13-14.)  Plaintiff cannot recall exactly when she stopped using the Bankcard, but she claims she never used the card after 2001.  (*Id.* at 13.)  On October 1, 2002, Plaintiff received the form debt collection letter from Defendant.  (*Id.* at 18-20.)  Plaintiff testified that she did not fully understand her right to dispute the First Premier Bankcard debt; although she did have some understanding that she could dispute it, she thought she "needed to explain my dispute and I didn't feel that was anyone's business but my own." (*Id.* at 30, 35.)  She also testified that she disputes the dollar amount M.R.S. claims she owes on the credit card, but conceded that she does not recall ever telling M.R.S. that she disputed the dollar amount. (*Id.*)  Plaintiff did not write a letter disputing the debt within thirty days because she was "put off by the words 'negative consequences,' " and was "afraid to even want to request to dispute – or [the letter] made me nervous and scared to send the

2

dispute

not knowing what would happen." (*Id.* at 37.)

Shortly after she received the letter, Plaintiff was contacted by telephone by a representative from M.R.S. Plaintiff requested an opportunity to make payment arrangements, but the representatives denied the request. (*Id.* at 20.) During this telephone conversation, Plaintiff asked for some documentation of the dollar amount owed, but the representative responded that Plaintiff should have her bills and should know the amount owed. (*Id.* at 30-31.) At her deposition, Defendant's counsel asked Plaintiff what she would do if she were offered a release from her debt to settle this claim. Plaintiff responded that she understood such a settlement would not cure Defendant's violation of the FDCPA as to other members of the proposed class. (Plaintiff Dep., at 16-17.) Plaintiff testified that she seeks to represent the "many other people that owe money and don't understand these letters who feel threatened by them." (*Id.* at 43.)

## DISCUSSION

**I.    Violation of the Fair Debt Collection Practices Act**

Plaintiff contends that Defendant's form debt collection letter violates the FDCPA, 15 U.S.C. § 1692g, by including language that confuses consumers about their debt validation rights. The Act requires debt collectors who contact consumers regarding a debt to include in writing, "a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector." 15 U.S.C. § 1692g(4). Plaintiff concedes that Defendant's debt collection letter includes this notice, but argues that additional language in the letter renders such validation notice ineffective. Specifically, Plaintiff contends that the language, "If for some reason you believe this debt is not valid, please review your rights listed at the bottom of this letter and contact our office to explain the nature of the dispute," mistakenly leads

3

consumers to believe that they are entitled to dispute the debt only if they believe the debt is not valid and they have some explanation as to why the debt is not valid. (Letter from M.R.S. to Cox of 10/01/02, Ex. A to Pl.'s Mot.; Pl. Mot., at 1-2.)

Plaintiff notes that under the FDCPA, a consumer is entitled to dispute the validity of a debt for a good reason, a bad reason, or no reason at all. *See Whitten v. ARS National Services, Inc.*, No. 00 C 6080, 2002 WL 1050320, at *4 (N.D. Ill. May 23, 2002) (imposing a requirement that a consumer have a "valid" reason to dispute the date is inconsistent with FDCPA). Plaintiff argues that Defendant's letter confuses consumers as to their rights to dispute the validity of the alleged debt, and thus violates the FDCPA. *See Chauncey v. JDR Recovery Corp.*, 118 F.3d 516, 518 (7th Cir. 1997) (holding that debt collectors cannot "overshadow or contradict [validation] information with other messages sent with the validation notice.") (internal citations omitted).

## II.    Class Certification

Plaintiff moves to certify a class consisting of: (1) all Illinois residents, (2) from whom Defendant attempted to collect a consumer debt, (3) from September 24, 2002 to the date Plaintiff filed her on September 24, 2003, (4) relating to a debt allegedly owed to First Premier Bankcard, via the same debt collection letter. (Pl.'s Mot., at 2.)

Plaintiff bears the burden of showing that the requirements for class certification are met. *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 614 (1997). Class certification is appropriate when all of the elements of Rule 23(a) and one of the elements of Rule 23(b) have been satisfied. *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998). Under Rule 23(a), Plaintiff must demonstrate that the class is so large that joinder is impractical, that questions of law or fact are common to the class, that the class representative's claim is typical, and that she is able to fairly and adequately protect the interests of the class. FED. R. CIV. P. 23(a). Plaintiff here seeks certification under Rule 23(b)(3), which requires a showing that: (1) questions of law or fact common to the class predominate over individual questions, and (2) the class action is superior to other means of

4

adjudicating the alleged class claims. FED. R. CIV. P. 23(b)(3).

The court notes, preliminarily, that FDCPA cases based on form debt collection letters have repeatedly been certified as class actions throughout the Seventh Circuit. Indeed, claims arising out of standard documents, such as the instant case, present a "classic case for treatment as a class action." *Keele*, 149 F.3d at 594 (internal citations omitted).

Defendant does not challenge the proposed class with respect to numerosity or commonality, and the court concludes that those requirements are met here. Defendant acknowledges that it sent the same form debt collection letter to 750-900 Illinois residents. (Letter from Jennifer Wigington to David Phillips of 5/25/2002, Ex. A to Pl.'s Re.) Joinder of the many recipients would clearly be impractical. There are also common questions of law or fact, namely: (1) whether Defendant's form collection letter violates FDCPA, 15 U.S.C. § 1692g, and (2) the appropriate relief to be granted.

Defendant does argue, however, that the requirements of Rule 23(a)(3) and (4), typicality and adequacy, have not been satisfied. In addition, Defendant contends that common issues do not predominate, so class treatment is not superior to individual actions. The court addresses these arguments in turn.

## A.   Typicality

The requirement of typicality is satisfied when "each class member's claim arises from the same course of events and each class member makes similar arguments to prove the defendant's liability." FED. R. CIV. P. 23(a)(3). Factual differences between the class representative's claims and those of the class are permissible, but the class representative's claims must arise "from the same event or practice or course of conduct that gives rise to the claims of other class members." *De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983).

Defendant contends that under Plaintiff's theory, those individuals harmed by the letter are only those who do not have what they consider a valid dispute and, solely for that reason, failed

5

to exercise their validation rights.  Defendant reasons that Plaintiff's claims cannot therefore be

typical because she believed she did have a valid reason for disputing the debt; specifically, she

disputed the dollar amount of the debt.  (Plaintiff Dep., at 30.)  Defendant further notes that Plaintiff

could not remember whether she ever orally disputed the amount of the debt.  If she did so,

Defendant argues, she cannot then represent a class of consumers claiming to be confused about

their validation rights, as she clearly understood her rights and exercised them.  On the other hand,

even if Plaintiff never did dispute the debt, she testified that she did understand that she had thirty

days to do so in writing.  (*Id.* at 36.)  In Defendant's view, this means that Plaintiff cannot then

represent a class of individuals claiming to be confused about their validation rights.  Finally,

Defendant contends that Plaintiff, who was not herself confused about her validation rights, cannot

represent a class of people on the theory that the debt collection letter is confusing.  In support of

this argument, Defendant cites *J. H. Cohn & Co. v. American Appraisal Associates, Inc.*, 628 F.2d

994 (7th Cir. 1980), for the proposition that "the presence of even an arguable defense peculiar to

the named plaintiff class or a small subset of the plaintiff class may destroy the required typicality

of the class as well as bring into question the adequacy of the named plaintiffs' representation."

*Id.* at 999.

The court is not persuaded by these arguments.  First, Defendant arguably overstates

Plaintiff's understanding of her validation rights.  Plaintiff did testify that she understood she had

thirty days to write a letter and ask to dispute the debt, (Plaintiff Dep., at 36); she also testified,

however, that she did "not fully" understand this right, and believed that she also "needed an

explanation."  (*Id.* at 35.)  In Plaintiff's words, the letter told her she "needed to explain my dispute

and I didn't feel that was anyone's business but my own."  (*Id.* at 30.)  As Plaintiff observes, this

confusion about the need for an explanation is the precise problem with Defendant's debt collection

letter. The additional language requiring the consumer to "explain the nature of the dispute," may

indeed suggest that the consumer may not exercise validation rights without a valid basis for

6

disputing the debt.

*J.H. Cohen* is factually inapposite to the present case, as it did not involve a consumer dispute or a debt collection. In *J.H. Cohen*, a mutual fund, Evergreen Fund, Inc., filed a class action against a publicly traded company, American Appraisal Associates, Inc., alleging that the defendants made material misrepresentations that inflated the market price of the company's stock. The Evergreen Fund sought to include as plaintiffs all persons who purchased securities from American Appraisal over a specified period. 628 F.2d at 995. The court held that the defendants had a defense peculiar to the named plaintiff, because the Evergreen Fund was a sophisticated investor, and such investors may not be as justified in relying on material misrepresentations as other purchasers of American Appraisal's stock. *Id.* at 998-99. The present case is clearly distinguishable from *J.H. Cohen*, as Plaintiff's understanding of the letter, or lack thereof, does not create peculiar defenses that would cast a cloud on her typicality.

Plaintiff correctly notes that it is M.R.S.'s misstatement of the requirements of § 1692g that constitutes the violation of the FDCPA, not what Plaintiff, or any other member of the class, might have done in response to the misstatement. Whether a debt collection letter violates the law is determined according to the unsophisticated consumer standard, and thus it is not necessary to even show that Plaintiff read the letter or was confused by it. *Bartlett v. Heibl*, 128 F.3d 497, 499-500 (7th Cir. 1997). The fact that Plaintiff may have orally disputed the amount of the debt, and at least partially understood her validation rights, is not dispositive. Plaintiff's individual experience and confusion with the letter thus do not destroy her typicality with respect to the proposed class. Finally, Plaintiff's claims and the claims of the class clearly involve the same course of conduct by the Defendant because they are brought under the FDCPA and relate to an identical form collection letter.

Plaintiff has fulfilled the typicality requirements of Rule 23(a)(3).

**B.     Adequacy**

7

Defendant also challenges Plaintiff's adequacy to serve as a representative of the class. Rule 23(a)(4) requires that the named plaintiff fairly and adequately protect the interests of the class. Three important factors in making this determination are: (1) whether the plaintiff has interests that are antagonistic to the class, (2) whether the plaintiff has a sufficient interest in the outcome to ensure vigorous advocacy, and (3) plaintiff's counsel's qualifications, experience, and ability to conduct the litigation vigorously. *Gammon v. GC Services Ltd. Partnership*, 162 F.R.D. 313, 317-19 (N.D. Ill. 1995). Defendant does not challenge Plaintiff's interests in the outcome or Plaintiff's counsel's qualifications to litigate vigorously. Instead, Defendant again argues that because Plaintiff knew she could dispute the amount of the debt, and because she may have orally disputed the debt with Defendant, the calculation of Plaintiff's injury as a result of the letter is speculative. Accordingly, Defendant contends, Plaintiff is not an adequate class representative.

Again, the court is not persuaded. First, as previously discussed, the record clearly establishes at least some level of confusion by Plaintiff as to her rights to dispute her debt with M.R.S. *Savino v. Computer Credit, Inc.*, 173 F.R.D. 346 (E.D.N.Y. 1997), cited by Defendant, is inapposite. In *Savino*, the named plaintiff alleged he had not received a debt collection letter, but then admitted in his deposition that he had received the letter. *Id.* at 349. The court held that the inconsistencies between the plaintiff's pleadings and his deposition testimony precluded the plaintiff from being an adequate representative for the proposed class. *Id.* at 357. The court also noted that the inconsistency of whether the plaintiff received the debt collection letter made calculation of his injury from the letter speculative. *Id.* Here, it is undisputed that Plaintiff received the letter, and her deposition testimony establishes that she was at least minimally confused on how to dispute her debt. There are no important factual inconsistencies surrounding the Plaintiff, nor are the damages she suffered overly speculative.

As previously explained, the central issue here is whether the letter's additional requirement that consumers provide an explanation of the nature of their dispute violates § 1692g of the

8

FDCPA, not whether the recipients of the letter understood they had a right to dispute the debt at all. Whether or not Plaintiff understood that she had a right to dispute her debt, and whether that makes calculation of her injury speculative, does not therefore touch on Plaintiff's adequacy under Rule 23(a)(4). The record shows Plaintiff to be an adequate representative of the class: she answered discovery and sat for a deposition; she understood that Defendant's hypothetical offer of a settlement releasing her from debt would not cure Defendant's violation of the FDCPA as to other members of the proposed class, (Plaintiff Dep., at 16-17); she understood that the purpose of her lawsuit was to determine "the validity of this letter and try to make a change to it," (*Id.* at 42); and she testified that she was seeking to represent other individuals like her who received Defendant's letter and were confused by it. (*Id.* at 41-43.) These facts demonstrate that Plaintiff's interests are not antagonistic to those of the proposed class. Plaintiff has therefore met the adequacy requirements of Rule 23(a)(4).

**C.     Predominance**

The court is also not moved by the Defendant's final objection to class certification: that Plaintiff has not shown that common questions of law or fact predominate over questions affecting only individual members, as required by Rule 23(b)(3). Defendant again argues that because Plaintiff claims she had a valid dispute and may have communicated this dispute with Defendant, her claims are distinct from those other class members, and thus a class action is not a superior method of adjudication. As has been previously discussed, Plaintiff's individual response to the M.R.S. letter is not dispositive of whether the letter violated the validation requirement of § 1692g. Plaintiff's claims fit neatly within Rule 23(b)(3). Liability questions in this case are subject to class wide proof and would not require the "individual and fact intensive" determinations that Defendant contends are necessary. *See Blair v. Supportkids, Inc.*, No. 02 C 632, 2003 WL 1908031, at *4 (N.D. Ill. Apr. 18, 2003). Indeed, Defendant's liability to each class member springs from the same legal theory and the same debt collection letter. Plaintiff correctly notes that a class action is

9

superior to other adjudicative methods in this case because: (1) a class action ensures that all member's rights are protected because it is unlikely most recipients of the letter are aware of their rights under the FDCPA; (2) the maximum amount that any individual class member can recover under the FDCPA is relatively small, and thus the interests of class members in individually prosecuting their claims are minimal; (3) judicial economy favors trying the validity of Defendant's form collection letters in one action; and (4) the case should not present any significant management problems if certified as a class action.  (Pl.'s Mot., at 6); *see Daley v. Provena Hospitals*, 193 F.R.D. 526 (N.D. Ill. 2000) (class action was superior method for adjudicating claims that hospital group's form letters violated Fair Debt Collection Practices Act); *Vines v. Sands*, 188 F.R.D. 302, 305 (N.D. Ill. 1999) (common action is preferable to individual actions determining debt collection service's liability for mailing a standardized letter); *Beasley v. Blatt*, No. 93 C 4978, 1994 WL 362185, at *5 (N.D. Ill. July 11, 1994) ("the principles of judicial economy and efficiency favor trying the legality of a single form letter in one litigation").  Given the above factors, the court finds that Plaintiff has satisfied the requirements of Rule 23(b)(3).

## CONCLUSION

For the reasons discussed above, Plaintiff's motion to certify class action (Doc. 10-1) is granted.  The court will certify a class as proposed in Plaintiff's motion of: (1) all persons in Illinois, (2) from whom Defendant, M.R.S., attempted to collect a consumer debt, (3) from September 24, 2002 to September 24, 2003, the date Plaintiff filed her complaint, (4) relating to a debt allegedly owed to First Premier Bankcard, via the same debt collection letter.

ENTER:

Dated: August 3, 2004

REBECCA R. PALLMEYER
United States District Judge